## Culver *v.* Hood.

1. Where complicated matters of account were referred to an auditor, under the act of Oct. 16, 1885 (Acts 1884-85, p. 98), and both parties filed exceptions of fact to his report, it was not an abuse of discretion to allow the opening and conclusion of the argument to that party against whom the report bore the more unfavorably and whose exceptions, both as to number and substance, were of the greater importance.

2. It appearing from the evidence of the plaintiff himself that the promissory note upon which his action was brought was given in final settlement of all the mutual accounts between himself and the defendant, a statement by the court, in its charge, to the effect that this was an undisputed fact in the case, even if incorrect, was not a matter of which the plaintiff had any right to complain.

3. Where in such a case the auditor reported his conclusions of fact together with the evidence introduced before him, and the case was submitted to a jury upon exceptions of fact, it was within their power, without the introduction of any other testimony, to reach different conclusions from those of the auditor, and to find accordingly.

4. The verdict was not so entirely unwarranted by the evidence submitted to the jury as to authorize this court to set it aside after its approval by the trial judge, and there was no error requiring a new trial.

December 2, 1895.

Exceptions to auditor's report. Before Judge Van Epps. City court of Atlanta. January term, 1895.

Culver sued Mrs. Eliza Hood upon a promissory note for $3,717.50 principal, besides interest and attorney's fees, dated November 2, 1891, and due November 1, 1892, payable to Culver or order, for "value received." Defendant pleaded, beside the general issue, as follows: Plaintiff is her brother-in-law, and was a bosom friend of her deceased husband J. R. Reynolds, who died in March, 1889. At the date of his death she had never had to look after her business matters, knew nothing about business, and having the utmost confidence in plaintiff, turned over all of her business to him, supposing he would treat her right. They were partners in a truck farm, and so great was her confi-

dence in him that she allowed him to have full control of
the entire business, along with all her other business.
Shortly after her husband's death she collected $3,000 in-
surance on his life, which she put in bank, and having also
$800 in bank, and desiring to improve her Whitehall street
property, turned the matter over to plaintiff and sold a
piece of realty for $3,000.   This too was placed to her
credit in the bank, making in all $6,800.   During the time
she was having the work done she borrowed $6,000, which
was also placed to her credit in the bank, and shortly after-
wards $4,000, which was also placed in the bank, and
shortly afterwards $2,500.   Of this amount she handed
plaintiff $2,400.   During the time she was having the
work done she paid plaintiff in checks, as by exhibit at-
tached, $8,105.   She paid M. T. Culver, brother of plain-
tiff, and by his direction, in checks, as per exhibit attached,
$5,154.34.     She paid Culver, Eisman & Company, of
which firm plaintiff was a member, checks to the amount of
$1,053.49, as per exhibit attached.   She paid for material
for the improvement of said realty, as per exhibit attached,
$2,183.85; making $12,677.28 she had paid out.   After
her husband's death plaintiff collected her rents and paid
her expenses, and on November 2, 1891, they had a settle-
ment, in which he claimed that she owed him a difference
of $686.97, and on the stores (improvement of the realty)
he claimed that she owed him $2,943.28, besides $87.50
interest, and insisted that she give him her note for that
amount, which she did under his representations, believing
them to be true, which amount added to the $12,677.28
makes the cost of the building, according to plaintiff's
statement, $15,708.06.   She attaches the statement fur-
nished her by plaintiff, showing the cost of the building to
be $14,460.45, admitting that defendant had paid this sum
less $2,943.28, which last amount is included in the note
sued on.   The relationship between her and plaintiff was
of such a character as to be of a confidential nature, and he

knew she had all confidence in him, that she knew nothing of business and relied solely on him, and he took advantage thereof, and by false and fraudulent representations as to the cost of the buildings and as to what she owed him, knowing she knew no better at the time and thinking she would never find out his treachery, had her to give him the note sued on. She refused to pay the note at maturity, having in the meantime found out to a certain extent that he had purposely practiced a fraud upon her. Since the suit was filed she has employed an experienced architect to make a careful estimate of the entire cost of said buildings, which shows that they did not cost but $11,829.93, which makes a difference of $2,479.68, and added to this sum the amount paid by defendant, which plaintiff has charged to her, makes $4,663.43, which last amount was due her by him when she gave the note, but she did not know it, etc. The note is without consideration, was obtained by fraud; and she prays judgment against plaintiff for $4,663.43, or for such sum as the evidence may show she is entitled to. Since the filing of the foregoing plea she finds that plaintiff owes her as per an exhibit attached, besides other amounts stated therein, $675.85, for which several amounts he failed to render any account, and her failure to discover the impositions on his part is attributable to the implicit confidence she had in him.

The case was referred to an auditor, to whose report plaintiff filed the following exceptions: (1) As appears from the evidence, defendant was indebted to plaintiff $3,717.50 November 2, 1891, and it is reported that at said date she was due him only $3,586.36. (2) The note sued on, as shown by the evidence, was a settlement, not of a general balance on the account for work of plaintiff in building the stores, and doing other things for defendant, but the note was given to cover amounts advanced by plaintiff to defendant for certain items of the work mentioned. Wherefore the basis of the auditor's calculation made in

order to ascertain the debits and credits, is a mistake and in the teeth of the evidence. The evidence showed that no items of the work mentioned above, which had been paid for out of the money of defendant, were considered between the parties at the settlement just preceding the making of the note, and that the note was given solely to cover the balance due on such advances as had been made by plaintiff to defendant, as stated above. As said note was so made with a full knowledge by defendant of all the matters and things involved in said settlement, and all defenses, if there were any, being thereby waived, the auditor ought to have found the full amount of the note for plaintiff. (3) Defendant filed pleas which were sustained only to a very small amount, to wit $250. Under these facts, plaintiff was entitled to the attorney's fees stipulated in the note, to wit ten per cent. upon the amount of principal and interest reported in favor of plaintiff, and said report does not allow plaintiff for said attorney's fees. The report ought to be corrected by allowing plaintiff attorney's fees for the whole amount to which the pleas of defendant were not sustained.

Defendant filed the following exceptions: (1) The credit allowed plaintiff of $686.97 by the auditor is contrary to the evidence, by reference to which it will be seen that plaintiff's account against defendant as kept by himself was $3,411.40. From this amount he deducted what he claimed he had collected for her, to wit $2,724.43, leaving $686.97, and this amount was included in the settlement and is already embraced in the note; the report shows that Culver has already had the benefit of this credit. (2) The allowance to Culver by the auditor of $260 West End taxes is contrary to the evidence, which shows that defendant paid it or that it was paid out of her money. (3) The allowance to Culver by the auditor of $1,000 is contrary to the evidence except a general statement of plaintiff in answer to this question: "How much did you pay out on

different checks, other than the buildings, and while it was going on?" Answer: "About $1,000 or $1,500, I suppose." This statement should not have been considered by the auditor, as plaintiff furnished the auditor no *data* upon which to base such a judgment. (4) It was contrary to the evidence to deduct $424.70 from amount of rents collected by plaintiff and not accounted for, to wit $675.85, said $424.70 having already entered into the first settlement, and the judgment of the auditor simply allows plaintiff credit for the same thing twice, making the amount found to be due plaintiff originally of $16,023.63, too large by $3,053.52, the items stated in the foregoing making this amount. (5) The judgment of the auditor as to the nature of the relations existing between plaintiff and defendant is in direct conflict with the testimony, as it is overwhelmingly shown that the relations were as set out in defendant's plea, and is based alone on one expression used by the defendant while testifying before the auditor in this case, that she discovered plaintiff's treachery in August prior to the giving of said note; but by reference to her testimony the remark related to their truck-farming enterprise, and was in no wise connected with this settlement in November following; and in connection therewith stated that even after that she had confidence in plaintiff. She states further, that while she signed the note in her husband's presence, they had only been married but a few days and her husband knew nothing whatever about the matter. (6) The evidence of the plaintiff shows that he borrowed on his wife's property $2,400, and placed it in the bank to his wife's credit; that this money was borrowed for the benefit of the defendant, to be used by the plaintiff on defendant's buildings; but he did not take the defendant's note for the same, did not show any mortgage upon which this loan was made, and furnished no *data* upon which the court could act. The plaintiff claims that this $2,400 was paid out by him on the defendant's buildings, mostly on

pay-rolls, and the defendant contends that no such thing was done. It was unnecessary, in the first place, for plaintiff to mortgage his property for the defendant's benefit, when she had unencumbered property of her own; and therefore it was unnecessary for that to have been done, and the same was without her knowledge and consent. Plaintiff's wife on this point testified that this was done, and that the defendant gave the plaintiff her note for said amount, that the same had been lost, that plaintiff had been looking for it and could not find it. This testimony is contradicted by the plaintiff himself. This amount, having entered into the original settlement and embraced in said note, should have been deducted, upon the grounds that the proof was insufficient to establish that fact. (7) The finding of the auditor of the cost of the building to be $11,049.20, is in conflict with the testimony. Architects Corput & Foote each testified that the cost of the labor in buildings of that character is not more than 25 per cent. of the cost of the material; architect LeSeur, says that the cost of labor in erecting said building, or buildings of that kind, does not exceed two fifths of the cost of the material; therefore, taking Corput's estimate, it being the highest, as to the cost of said building, and deducting therefrom $5,376.77, leaves the cost of the material to be $8,697.23; and now 25 per cent. of this amount, according to Foote & Corput, would be $2,174.30, and this amount should be taken from the cost of the labor as claimed by plaintiff's side of the case, leaving a difference of $3,202.47, which amount the defendant is entitled to be credited with.

The jury sustained the exceptions of defendant, except the first and seventh. They rejected the first exception of plaintiff, but no finding appears as to his other exceptions. The charge of the court is not in the record, and it does not appear what rulings the court made on the exceptions, except as indicated by the motion for new trial. No judgment or decree appears in the record. Plaintiff's motion

for new trial was overruled, and he excepted.    In the heading to the motion it is stated that the verdict disallowed all of plaintiff's exceptions.    The motion was upon the grounds (beside those stated in the opinion), that the verdict was contrary to law and evidence; and that the court refused to give the following charge upon written request: "If the evidence shows that defendant has mislaid or lost papers which might throw light upon this controversy, such papers having been turned over to her by plaintiff when he made the adjustment, then the plaintiff is not to be charged with his failure to show exactly how the amount for which the note was given was reached, but such failure may be attributed to the loss of said papers.    Here the burden is upon the defendant, and not upon the plaintiff."

*John C. Reed* and *Mord Foote, Jr.*, for plaintiff.

*R. J. Jordan, J. A. Anderson* and *Dorsey, Brewster & Howell*, for defendant.

SIMMONS, Chief Justice.

Culver brought his action against Mrs. Hood on a promissory note for $3,717.50.    The defendant filed several pleas, among which was a plea that the note had been procured from her by fraudulent representations of the plaintiff, in whom she had at that time the utmost confidence, he being her brother-in-law.    There was also a plea of set-off.    It appearing that the note was given in settlement of long standing and complicated matters of account, the matters in dispute were referred to an auditor, under the act of December 16, 1885; and the auditor, after hearing the evidence, reported that at the time the note was given the defendant owed the plaintiff only $3,586.36, with interest from the date of the note at eight per cent.    To this report the plaintiff filed three exceptions: (1) that the auditor should have found the full amount of the note instead of making the deduction; (2) that "the note sued on, as shown by the evidence, was a settlement, not of a

general balance on the acount for work of plaintiff in building the stores and doing other things for defendant, but was given to cover amounts advanced by plaintiff to defendant for certain items of the work mentioned"; and (3) that the plaintiff was entitled to the attorney's fees stipulated in the note, to wit ten per cent. on the principal and interest, and the report does not allow such fees. The defendant filed several exceptions of fact, which will be seen by reference to the report which precedes this opinion. The jury sustained all of the defendant's exceptions except the first and the seventh, the effect of their finding being that the defendant was not indebted to the plaintiff. The plaintiff made a motion for a new trial, which was overruled, and he excepted.

1. The first ground of the motion for a new trial was, that the court erred in allowing the defendant the opening and conclusion of the argument before the jury, over the plaintiff's objection. Under the facts of the case, we do not think this was an abuse of discretion. The exceptions of the plaintiff to the auditor's report were of minor importance, while the exceptions of the defendant went to the whole merits of the case. The auditor had made a finding which, if sustained, would fix upon her a liability to the plaintiff for a large amount; and the burden was upon her to overcome the *prima facie* case thus made by the finding of the auditor. If she had made no exceptions, judgment would as a matter of course have been rendered against her for the amount found by the auditor. Under this state of facts, it seems to us that she ought to have had the opening and conclusion. At any rate this, under the act of 1885, was a matter of discretion with the trial judge; and the judge, in exercising that discretion, did what the law now requires shall be done in such cases. (See act of Dec. 18, 1894, which provides that "in all cases where both parties file exceptions of fact, the party against whom judgment would be rendered if the report were approved, shall be entitled to open and conclude the argument.")

2. Another ground of the motion for a new trial is, that the court erred in charging, with reference to the second exception of the plaintiff to the auditor's report, that "the undisputed evidence is that this note was given in final settlement of the mutual accounts of the parties, and I instruct you to disregard this exception." The full charge of the court was not brought up in the record, and we therefore cannot see in what connection this was said; but in view of the testimony of the plaintiff himself, we do not see what right he has to complain of this instruction. He testified: "The account [in settlement of which the note was given] covered all expenses I had expended for her [the defendant]. I expended money for [her] husband's death and burial, and completing the building; also running the house; I bought supplies for the house; we run a little farm then—the expenses for that; truck farms at different lots; also some repairs at different places," etc. At the settlement he had "all the bills for such things as he had paid for and charged up to her." It will be seen, therefore, that the plaintiff's second exception is contradicted by his own testimony.

3. Under the act of 1885, under which the case was submitted to the auditor, it was his duty to "report the evidence heard by him, the facts found by him, and his rulings on all questions of law, and a general summary of his findings." Under that act each party had the right to except; and it was the duty of the judge to examine the report, and if it did not appear that error had been committed, to approve the report and dismiss the exceptions; but if he should find that error had been committed, it was his duty to approve the exceptions and cause the issue thus made to be submitted to a jury; and it was provided that on the trial before the jury "only so much evidence reported by the master or auditor as is pertinent to the issue then on trial shall be read to the jury, with such newly discovered evidence as would authorize the grant of a new trial taken in

connection with the evidence already adduced, which newly discovered evidence shall be made to appear to be such by affidavits supporting the same satisfactory to the presiding judge, and which newly discovered evidence may be presented to the jury either orally or by deposition." (Acts 1884–5, p. 98.)   In this case the auditor reported the evidence, and the evidence so reported was all that appears to have been submitted to the jury upon which to try the issues of fact raised by the exceptions to the report, which exceptions had been approved by the judge and submitted to the jury.   In the motion for a new trial the question is raised whether the jury had a right, under the same evidence, to find differently from the auditor.   It will be seen that under the act above quoted from, when the judge approved the exceptions and submitted them to the jury, no other evidence was to be read before them than that reported by the auditor, unless it was newly discovered evidence.   In this case there was no newly discovered evidence.   If the jury could not disagree with the auditor and make a different finding upon the facts, what would be the use of submitting the same facts to them?   It was certainly not contemplated by the act that they should be mere figureheads, to register the findings of the auditor. In our opinion the act contemplated that a jury might reach a different conclusion from the auditor upon the same evidence, and should be authorized to find accordingly.   If this were not so, the trial of the issues made by the exceptions of fact would be a mere farce, and it would be a waste of the time of the court and country to submit the case to the jury.

4. There was evidence which would authorize the jury to find as they did, and the trial judge being satisfied with their verdict, this court will not interfere with it.

<em>Judgment affirmed.</em>